In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1928

Edward L. Ellsworth,

Petitioner-Appellant,

v.

Mark Levenhagen,

Respondent-Appellee.


Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:99-cv-0115--Allen Sharp, Judge.


Argued February 22, 2001--Decided April 20, 2001


 Before Bauer, Coffey, and Manion, Circuit Judges.

 Coffey, Circuit Judge.  On February 25, 1999,
Edward L. Ellsworth filed a petition for a writ
of habeas corpus, 28 U.S.C. sec. 2254, arguing
that his Sixth Amendment rights were violated
when an Indiana trial court answered two written
questions from the jury without consulting and
outside the presence of defense counsel. The
district court denied the petition, and Ellsworth
now appeals. We affirm.

I.  FACTUAL BACKGROUND

 Edward Ellsworth was convicted in the Allen
County (Indiana) Circuit Court of robbery causing
serious bodily injury and sentenced to thirty
years in prison. At one point during jury
deliberations after his trial, the jurors
forwarded two written questions to the judge. The
first question asked, "Is the jury able to obtain
copies of police reports for review? a) Pappas;
b) Clifford; c) Taylor; d) Quait." The judge
responded that "reports are not evidence, only
testimony and exhibits [are evidence]." The
second question submitted to the judge asked, "Is
the jury able to review exhibits again?" The
judge answered "yes" to this question. But the
judge did not inform counsel that the jury had
submitted these written questions before
answering them.

After the jury returned a guilty verdict, the judge then informed the parties that "notes from the jury are available for inspection of counsel." Ellsworth's counsel inquired as to when the judge had received communications from the jury and the nature of the court's response. The trial judge informed defense counsel that he had received two notes during deliberations and had inserted his handwritten responses on the bottom of each of the notes. Both notes were then entered into the court's record. At this time, Ellsworth's counsel objected to the judge's communications with the jury, particularly noting that even though the police reports themselves were not admitted in evidence, each officer read a substantial portion of their respective reports into the record during the presentation of the state's case-in-chief.

On direct appeal to the Indiana Appellate Court, Ellsworth argued that the judge's ex parte communication with the jury violated "[his] right to be present at every stage of the proceedings." Although Ellsworth did not explicitly mention the Sixth Amendment in his brief on direct appeal, he cited and relied extensively upon, Jewell v. Indiana, 624 N.E.2d 38, 41-42 (Ind. Ct. App. 1993), an Indiana case that relied upon the Sixth Amendment to support the proposition that a criminal defendant has the right to be present at all critical stages of criminal proceedings. Ellsworth argued that he had been prejudiced by the ex parte communication because his counsel could have provided alternate responses had he been informed of the questions. The Indiana Appellate Court affirmed Ellsworth's conviction, noting that:

Ellsworth objected to the communications, but stated no specific grounds. He now contends that had he been advised of the jury's notes, he could have ascertained whether there was a disagreement among the jurors as to the testimony concerning the police reports. However, the requests do not indicate a disagreement as to the testimony relating to the exhibits. Although the judge's response to the notes creates a rebuttable presumption that error was committed, the judge's communication had no effect upon the jury's ability to come to a fair determination of the case. Furthermore, the trial judge denied the jury's request to obtain copies of police reports. When a trial judge responds to a jury question by denying the jury's request, any inference of prejudice is rebutted and the error is deemed harmless. Morrison v. State, 609 N.E.2d 1155 (Ind. Ct. App. 1993). Therefore, no harm resulted from the court's communication with the jury outside Ellsworth's presence.

Shortly after his state petition for post-conviction relief was denied without prejudice, Ellsworth commenced this habeas corpus action in the Federal district court for the Northern District of Indiana alleging, among other things, the right to be present during communications between the judge and the jury. Although the Federal district court noted that it was "greatly troubled by the communication and dealings between the state trial judge and jury during deliberations which have both Sixth Amendment and due process implications," it considered the error to be harmless and denied Ellsworth's petition. The district court, however, granted Ellsworth a certificate of appealability with regard only to his Sixth Amendment claim. Ellsworth appeals that issue.

II.  ISSUE

Ellsworth argues on appeal that he was prejudiced by the ex parte communications between the state trial judge and the jury and therefore the district court erred in finding the judge's communication to be harmless.

III.  DISCUSSION
A.  Standard of Review

Under the current regime governing federal habeas corpus for state prison inmates, the inmate must establish that the state court proceedings:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. sec. 2254(d); see also Williams v. Taylor, 529 U.S. 362 (2000); Morgan v. Krenke, 232 F.3d 562 (7th Cir. 2000).

In reviewing a district court's denial of a petition for writ of habeas corpus, we review de novo the district court's conclusions of federal law, as well as the district court's mixed questions of law and fact. Kurzawa v. Jordan, 146 F.3d 435, 439 (7th Cir. 1998); Verdin v. O'Leary, 972 F.2d 1467, 1481 (7th Cir. 1992). The district court's factual determinations, however, are presumptively correct and should not be set aside unless clearly erroneous. Stone v. Farley, 86 F.3d 712, 716 (7th Cir. 1996). Further, "'state court factual findings that are reasonably based

on the record are accorded a presumption of correctness.'" Kurzawa, 146 F.3d at 440 (quoting Bryan v. Warden, Indiana State Reformatory, 820 F.2d 217, 218 (7th Cir. 1987)); see also 28 U.S.C. sec. 2254(e)(1).

B.  Procedural Default

 Before we proceed to the merits of Ellsworth's petition, we must determine whether he properly presented his Sixth Amendment claim in the state court proceedings. "Initially, the state courts must have had a 'fair opportunity' to consider a question of constitutional import before federal collateral review on that question is appropriate." Kurzawa, 146 F.3d at 441 (citing Burgin v. Broglin, 900 F.2d 990, 996 (7th Cir. 1990)). "A 'fair presentment' of a petitioner's claims requires that a petitioner give state courts 'a meaningful opportunity to pass upon the substance of the claims [petitioner] later presses in federal court.'" Spreitzer v. Schomig, 219 F.3d 639, 645 (7th Cir. 2000) (quoting Howard v. O'Sullivan, 185 F.3d 721, 725 (7th Cir. 1999)). To satisfy that requirement, an inmate must present "both the operative facts and the legal principles that control each claim to the state judiciary." Wilson v. Briley, No. 00-1277, 2001 WL 219902, *1 (7th Cir. Mar. 5, 2001).

 In determining whether a petitioner has fairly presented a claim to the state judiciary, we examine four factors: 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation. Id.; Sullivan v. Fairman, 731 F.2d 450, 454 (7th Cir. 1984); Verdin, 972 F.2d at 1473-1474. "The bottom line is that the 'task of the habeas court in adjudicating any issue of fair presentment is assessing, in concrete, practical terms, whether the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve that issue on a federal basis.'" Kurzawa, 146 F.3d at 442 (quoting Verdin, 972 F.2d at 1476).

 While the presence of any one factor, particularly factors one and two, does not preserve an appeal, id., here three factors are present. First, Ellsworth's reliance on Jewell alerted the state court to his Sixth Amendment claim. Jewell relied heavily upon the Sixth

Amendment in its analysis of an similar claim. 624 N.E.2d at 41-42. More importantly, Ellsworth's claim, that the judge's ex parte communication violated "[his] right to be present at every stage of the proceedings," calls to mind his Sixth Amendment right. See, e.g., Illinois v. Allen, 397 U.S. 337 (1970) (identifying the "right to be present" as "[o]ne of the most basic rights guaranteed by the Confrontation Clause"); Verdin, 972 F.2d at 1480 (claim based on "right to be present at critical stages" of trial was phrased in terms so particular to call to mind the Sixth and Fourteenth Amendments). Finally, the pattern of facts that Ellsworth alleged is "well within the mainstream of constitutional litigation." Indeed, the state admitted at argument that the state court's analysis would have been the same whether the court examined Ellsworth's claim under the United States Constitution or under Indiana's Constitution. Ellsworth was not required to cite the Constitution "book and verse" to preserve his federal claim, Picard v. Connor, 404 U.S. 270, 278 (1971), and we believe his assertion of a "right to be present" was sufficient to alert the Indiana court that he potentially pressed a federal constitutional claim. Thus, we proceed to the merits of Ellsworth's petition.

C.  Ellsworth's Sixth Amendment Claim
 The Supreme Court has held that the Confrontation Clause of the Sixth Amendment/1 includes the "right to be present in the courtroom at every stage of the trial." Allen, 397 U.S. at 338. This constitutional right to presence, though rooted in the Sixth Amendment, "is protected by the Due Process Clause in some situations were the defendant is not actually confronting witnesses or evidence against him." United States v. Gagnon, 470 U.S. 522, 526 (1985). But the constitutional right to presence is not implicated per se by a judge's ex parte communication with the jury during deliberations. Verdin, 972 F.2d at 1481-82.

[T]he mere occurrence of an ex parte conversation between a trial judge and a juror does not constitute a deprivation of a constitutional right. The defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication.

Gagnon, 470 U.S. at 526 (quoting Rushen v. Spain, 464 U.S. 114, 125-26 (1983) (Stevens, J., concurring)).

Accordingly, the due process right to be present at each and every communication between the judge

and jury is implicated only when such presence "'has a relation, reasonably substantial, to the fullness of [a defendant's] opportunity to defend against the charge . . . to the extent that a fair and just hearing would be thwarted by his absence.'" Verdin, 972 F.2d at 1482 (quoting Gagnon, 470 U.S. at 526) (omission in original). The defendant's right is violated only where his absence renders the trial "fundamentally unfair in light of the entire proceedings." United States v. Widgery, 778 F.2d 325, 330 (7th Cir. 1985). Thus, the proper inquiry is whether the ex parte communication had a prejudicial effect on the defendant, Verdin, 972 F.2d at 1482, and "so infect[ed] the trial process as to make the trial as a whole fundamentally unfair," id. at 1480 (quoting district court opinion).

Initially Ellsworth argues that the Indiana Court of Appeals applied a rule that was contrary to the law as set forth by the United States Supreme Court because Supreme Court precedent required that the ex parte communication be deemed presumptively prejudicial. Ellsworth contends that the Supreme Court has held that any ex parte communication with the jury is presumptively prejudicial, Remmer v. United States, 347 U.S. 227 (1954). Remmer, however, is distinguishable from this case. In Remmer an unnamed third party contacted a juror and suggested that "he could profit by bringing in a verdict favorable to the petitioner." Id. at 228. Ellsworth cites no other Supreme Court precedent to establish the proposition that any ex parte contact between a judge and jury creates a presumption of prejudice, and Gagnon suggests that, at the least, ex parte communications between the judge and the jury are not per se unconstitutional. See Gagnon, 470 U.S. at 526 ("[t]he mere occurrence of an ex parte conversation between a trial judge and a juror does not constitute a deprivation of a constitutional right"); see also Widgery, 778 F.2d at 330 ("[o]nly a trial fundamentally unfair in light of the entire proceedings violates the open-ended aspect of the constitutional protection. Widgery's trial was generally conducted according to the rules, and a single glitch in a lengthy trial does not create constitutional error.").

In any event, we need not resolve this issue because Ellsworth's characterization of the Indiana Appellate Court's decision is obviously misconstrued to the benefit of the defendant. The Indiana Appellate Court noted several times that an inference of prejudice arises from an ex parte communication. The court wrote that "[a]n inference of prejudice arises from an ex parte communication and this inference creates a

rebuttable presumption that an error has been committed. Rebuttal of the inference deems the error harmless." Later the court reiterated this statement, noting that "[a]lthough the judge's response to the notes creates a rebuttable presumption that error was committed, the judge's communication had no effect upon the jury's ability to come to a fair determination of the case" (emphasis added). Thus, the Indiana Appellate Court did (whether or not it was so required) give Ellsworth the presumption that the ex parte communication was prejudicial.

Instead, the Indiana Appellate Court, after weighing the facts and applicable case law, determined that the error was harmless, noting that the jury's requests "do not indicate a disagreement as to the testimony relating to the exhibits . . . [and] the judge's communication had no effect upon the jury's ability to come to a fair determination of the case." This finding is not contrary to the law as articulated by the Supreme Court, as the Supreme Court has consistently held that the government may show that the ex parte contact was harmless. Rushen v. Spain, 464 U.S. 114, 120 (1983); Remmer, 347 U.S. at 229.

There is scarcely a lengthy trial in which one or more jurors do not have occasion to speak to the trial judge about something . . . . The lower federal courts' conclusion that an unrecorded ex parte communication between trial judge and juror can never be harmless error ignores these day-to-day realities of courtroom life and undermines society's interests in the administration of criminal justice.

Rushen, 464 U.S. at 118-19.

Accordingly, Ellsworth's claim that the Indiana Appellate Court's decision was contrary to the law as set forth by the United States Supreme Court is without merit.

In the alternative, Ellsworth contends that the Indiana Appellate Court's finding that the trial judge's error was harmless involved "an unreasonable application of clearly established federal law." In support, Ellsworth cites to Fillipon v. Albion Vein Slate Co., 250 U.S. 76 (1919). But Ellsworth's reliance upon Fillipon is misplaced. In Fillipon a judge, without informing counsel, responded to a jury question regarding the law of contributory negligence with an instruction that erroneously stated the law. Id. at 80-82. The facts of this case markedly differ. Here, the jury requested for review several police reports (which were not received in evidence) and certain exhibits (which were). The

judge merely informed the jury, correctly we add, that the police reports were not received in evidence and that the exhibits were. As such, the judge did not provide the jury with any additional instructions, much less direction as to how to deliberate. Thus, the communication, in addition to being factually accurate, was merely routine. With regard to a criminal defendant's right to be present, the Supreme Court has instead stated that a defendant suffers a Constitutional violation "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Gagnon, 470 U.S. at 526.

Still, Ellsworth presses the argument that if counsel had been made aware of the jury's notes, he could have suggested responses other than what the judge provided; and if he had (assuming they were an accurate application of the case law), they would have benefitted his defendant client. Therefore, Ellsworth argues he was prejudiced by the trial judge's failure to allow his counsel to suggest alternate responses to the jury's questions. His argument is based on a foundation of quicksand, and is nothing more than mere speculation. Ellsworth does not suggest what this response might have been--or how the failure to give it prejudiced him. Further, he never suggests in what way the jury's deliberations might have been altered--or even, as the Indiana Appellate Court noted, that there was some disagreement in the jury that would have been resolved differently--if his counsel had been allowed to give an alternate response to the jury's inquiry regarding the police reports. The trial judge's responses were accurate, and, moreover, were standard responses to simple questions.

In Verdin and Widgery, this court was confronted with similar factual situations. In Verdin we concluded that a state judge's answer to the jury's question regarding verdict forms was "a brief procedural remark that did not mislead the jury . . . and that fairness and justice were not thwarted by Mr. Verdin's absence at the exchange." Verdin, 972 F.2d at 1482 (citing Gagnon, 470 U.S. at 526). Thus, the ex parte communication "did not have sufficient prejudicial effect to rise to the level of a due process violation." Id. Similarly, in Widgery we concluded that a judge's ex parte responses to an accusation by a jury member of another juror's intoxication and a question about hypothetical deadlock was a "single glitch in a lengthy trial [that did] not create constitutional error." Widgery, 778 F.2d at 330 (citing Gagnon, 470 U.S. 522). Ellsworth fails to distinguish how the routine response given by the judge in this case

is any different than those provided in Verdin and Widgery, which we deemed harmless. Accordingly, Ellsworth's claim that the Indiana Appellate Court's unreasonably applied Supreme Court precedent to determine that the trial judge's error was harmless is also without merit. The district court's denial of Ellsworth's petition for a writ of habeas corpus is

AFFIRMED.


/1 The Confrontation Clause of the Sixth Amendment was made applicable to the states through the Fourteenth Amendment in Painter v. Texas, 380 U.S. 400 (1965).