# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 02-4257

THOMAS O. MOORE,

*Petitioner-Appellant,*

v.

STANLEY KNIGHT,

*Respondent-Appellee.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 02 C 334—**Allen Sharp**, *Judge.*

———————

ARGUED APRIL 5, 2004—DECIDED MAY 20, 2004

———————

Before BAUER, POSNER, and DIANE P. WOOD, *Circuit Judges.*

BAUER, *Circuit Judge.* This habeas corpus appeal arises from Thomas Moore's conviction for rape and criminal deviate conduct in 1992. Moore raises two substantive issues on appeal: (1) whether the state trial court judge violated his right to a fair trial by authorizing *ex parte* communications with the jury, and (2) whether the prosecutor failed to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 86 (1963). In reviewing these appeals, we find that the trial court judge's *ex parte* communications with the jury were inappropriate and interfered

with Moore's constitutionally guaranteed right to a fair trial. Accordingly, we reverse and remand to the District Court to issue Moore's writ, unless the state elects to retry him within 120 days.

## DISCUSSION

Shortly after 11 p.m. on September 14, 1987 a man posing as a police officer used flashing lights on his car to pull over a woman identified as "A.B.". During the course of the stop, the man asked for the woman's license and registration and had her perform a field sobriety test. Following the test, he put plastic restraints on her wrists, blindfolded her and placed her in his car. The man drove A.B. to multiple locations and raped her twice. Following these events, he returned the victim to her car and sped away.

At the subsequent trial, Moore presented an alibi defense that he had been with his ex-wife from 7 p.m. until 12:20 a.m. on the night in question and returned to the home he shared with his girlfriend around 12:20 a.m. He also argued that the victim's description of her attacker did not match his physical description.

Moore was convicted; he now raises two issues on appeal.

### I. Ex Parte *Communications with Jury*

During its deliberations at the conclusion of the trial the jury sent a note to Judge Kathy Smith. The note contained factual questions regarding Moore's alibi; specifically, the jury asked where Moore lived, the distance between the Moore's home and the location of the crime, and the time Moore arrived home on the night in question. Judge Smith responded to the questions, via the Bailiff, and did not discuss the matter with either attorney. None of this communication occurred on the record. Just prior to sentencing, the

Judge informed Moore's attorney of the jury's questions; this also occurred off the record. Moore's attorney objected; the Judge proceeded with sentencing. Moore now argues that the Judge's actions constituted *ex parte* communication with the jury in violation of his right to a fair trial.

Prior to determining the substantive value of this appeal we first examine its timeliness. We review de novo the District Court's decision to dismiss a habeas corpus appeal for being untimely. *Lloyd v. Van Natta*, 296 F.3d 630, 632 (7th Cir. 2002). Under 28 U.S.C. § 2244(d)(1), a defendant has a one-year deadline to file an application for a writ of habeas corpus. Pertinent to this case, the year will run from the later of "the date on which the judgment became final" or "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(A),(D) (2003). Moore contends that the triggering date was May 18, 1998—the day he received his investigator's letter detailing the results of his investigation into the *ex parte* communications. The government contends that Moore actually was aware of the existence of the claim prior to the end of his trial, when Judge Smith communicated to both attorneys that she had declined the jury's request to review testimony.

The sequence of events relevant to this issue are as follows. Moore's trial took place in the fall of 1992; his conviction became final on March 28, 1997. In early 1997 one of Moore's friends, Mike Storms, informed him that, based on overheard conversations, he believed the jury was "improperly led or coerced." (Br. of Petitioner-Appellant at 11.) Moore asked Storms to investigate. On May 18, 1998, Storms sent Moore a letter revealing the results of his investigation; the letter also contained two affidavits from jurors in question. Moore filed his state Petition for Post-Conviction Relief on January 5, 1999; one of the issues raised in the Petition was the *ex parte* communications. The

Judge considered the issue on its merits and denied Moore's appeal. After following proper procedural routes, Moore's appeal appeared before the United States District Court for the Northern District of Indiana. The District Court dismissed Moore's petition for exceeding the limitation period under 28 U.S.C. § 2244.[1] In subsequently granting Moore's certificate of appealability, we asked counsel to brief three issues, one of which was the timeliness of the appeal.

In determining the timeliness of this appeal we must consider two issues, first, the date on which Moore discovered the factual predicate of his claim, and second, whether Moore exercised due diligence in discovering this information. We agree with Moore that his appeal regarding the *ex parte* communications was appropriately raised within one year of his discovering the factual predicate for his claim. Prior to receiving the letter and affidavits, Moore did not know any specific information about what had transpired between the Judge and the jurors—he could only speculate as to what may have been said. Judge Smith's own explanation, which occurred off the record

---

[1] Judge Allen Sharp, writing for the District Court for the Northern District of Indiana, South Bend division, although denying Moore's appeal for untimeliness, saw fit to comment:

> Candor requires this Court to express concerns over . . . the way that the state trial judge handled the problem of a jury question and its answer. It does not take very long for one to preside in either state or federal criminal jury trials to realize that when a jury is deliberating, the relationship between the court and that jury is an enormously sensitive one which must be approached by the judge with great care and restraint. That simply was not done in this case.

(Memorandum and Order of Judge Allen Sharp of November 7, 2002 Dismissing Moore's Petition For Relief under 28 U.S.C. § 2254. No. 3:02cv0334 AS at 3).

and after the fact, was that she answered the juror's note, "by telling them that she could not give information or could not answer those questions"—a statement that, if true, did not present a basis for an actionable claim. (Br. of Petitioner-Appellant at 23.) It was not until Moore discussed the matter with Storms that he had reason to suspect the content of Judge Smith's communications to the jury was different than she had represented, and it wasn't until Moore obtained the jurors' affidavits that he had specific, concrete information regarding what had transpired, upon which he could base his claim.[2] Specifically, whereas Judge Smith had indicated to Moore and his attorney that she simply refused to answer the questions, Storms' investigation revealed at least one juror believed the answers conveyed by the Bailiff contained commentary on the content of testimony presented at trial (a situation that could have prejudiced the outcome of his trial). It follows that Moore simply did not have enough information to state his claim until he received the May 18, 1998 letter from Storms.

Alongside the issue of when Moore discovered the factual predicate for his claim is the question of whether Moore exercised due diligence in conducting his investigation of the incident. Although there was a lag between Storms' initial discussion with Moore indicating that the jurors may have had improper *ex parte* communications during trial and Moore's ultimate receipt of Storms' letter, we find that Moore was not dilatory in his investigation. We have

---

[2]  One juror stated that the Judge communicated to the jury via the Bailiff, and told them, "their question was not part of the testimony so they couldn't give us an answer." Additionally, that juror reported the Bailiff told the jury that, "no further questions or review would be allowed." A second juror remembered that they were told, "the jury must make their decision on what they heard in the court room." (Br. of Petitioner-Appellant at 25).

previously noted that a due diligence inquiry should take into account that prisoners are limited by their physical confinement. *Montenegro v. United States*, 248 F.3d 585, 592 (7th Cir. 2001), *rev'd on other grounds, Ashley v. United States*, 266 F.3d 671 (7th Cir. 2001); *see also Easterwood v. Champion*, 213 F.3d 1321, 1323 (10th Cir. 2000) (finding a prisoner's access to published legal materials is established once the prison library receives the materials, not when the materials were published). Similarly, we agree with the Second Circuit's observation that 28 U.S.C. § 2244 does not require "the maximum feasible diligence" but only " 'due,' or reasonable diligence." *Wims v. United States*, 225 F.3d 186, 190 n.4 (2d Cir. 2000). Considering the facts within these parameters, we agree that Moore acted with due diligence. While imprisoned, he employed Storms to conduct the investigation on his behalf; this employment began as soon as Moore had reason to suspect a harmful error in procedure and we do not find he was unreasonable in awaiting the results of Storms' somewhat slow investigation.

Having cleared the first hurdle of timeliness, we now turn to the merits of Moore's claim. The Antiterrorism and Effective Death Penalty Act of 1996 sets out the proper standard of review for this appeal: We will not grant the writ with respect to any claim that was adjudicated on the merits in the state court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings. 28 U.S.C. § 2254(d). Factual findings made by a State court are presumed correct, but may be rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The Confrontation Clause of the Sixth Amendment provides defendants the right to be present at all critical stages of the criminal proceedings. *Illinois v. Allen*, 397 U.S. 337,

338 (1970); *Ellsworth v. Levenhagen*, 248 F.3d 634, 640 (7th Cir. 2001). The Due Process Clause supplements this right by protecting the defendant's right to be present during some stages of the trial where the defendant's ability to confront a witness against him is not in question—*ex parte* communications between the judge and jury fall into this category. *United States v. Gagnon*, 470 U.S. 522, 526 (1985). Such communications between the judge and jury will violate the defendant's right only when the defendant's presence, "has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *Id.* (*quoting Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934)). Specifically, we look to see if the communications had a prejudicial effect on the defendant and rendered the trial "fundamentally unfair." *Ellsworth*, 248 F.3d at 640.

When *ex parte* communications with the jury occur off the record, determining whether those communications resulted in prejudice poses a vexing problem—this problem has been examined by a number of courts. In *Rushen v. Spain*, 464 U.S. 114 (1983) the Supreme Court considered the contention that *ex parte* communications conducted off the record could never be harmless error. The Court rejected such a proposition, but noted, "[t]his is not to say that ex parte communications between judge and juror are never of serious concern or that a federal court on habeas may never overturn a conviction for prejudice resulting from such communications." *Id.* at 119 . In arriving at its conclusion that the *ex parte* communication in that case was harmless, the Supreme Court explained that the judge and juror "did not discuss any fact in controversy." *Id.* at 121. Similarly, within this Circuit we have noted that a "brief procedural remark" by the judge to the jury, off the record, will not rise to the level of constitutional error. *Ellsworth*, 248 F.3d. at 642 (finding no prejudice when the judge answered jury's request to review evidence in the affirmative but disallowed request to review documents not entered into evidence);

*Verdin v. O'Leary*, 972 F.2d 1467, 1482 (7th Cir. 1998) (finding no prejudice when judge answered jury's question regarding use of jury forms, instructing jury that if they found defendant guilty of murder not to also return the jury form for manslaughter); *United States v. Widgery*, 778 F.2d 325, 330 (7th Cir. 1985) (finding no prejudice when judge answered a hypothetical jury question about deadlock in deliberations and intoxication on the part of a juror).

Moore argues that his case is distinguishable from the above discussions. He believes that communications made to the jury went to the substance of testimony presented at trial; specifically at issue is the jury's question regarding the time Moore arrived at his home on the night of the rape—a question that goes to the heart of his alibi defense. If it is the case that the jury was told there was no evidence in the record regarding this question, they were clearly conveyed incorrect substantive information. In fact, as part of his alibi defense, Moore's girlfriend testified that he arrived at their home around 12:20 a.m. (Br. of Petitioner-Appellant at 9.) Moore's argument is especially persuasive given the conditions of the trial, namely, that the jurors were not allowed to take notes, and the Judge instructed the jurors that they would not be allowed to ask any more questions. Given the situation, it takes little imagination to see why, if Judge Smith (or her Bailiff) did indicate that there was no evidence in the record that addressed the subject of the jurors' questions, that response could have affected the outcome of the trial.

On January 15, 2001, the Clinton County Superior Court conducted post-conviction proceedings investigating the *ex parte* communications between the Judge and jury—this was more than eight years after the conclusion of Moore's trial. The court's factual findings were that "the trial court judge directed the bailiff to tell the jurors that their questions could not be answered and that no further questions

would be allowed." (R. at App. 23, ¶ 18.)[3] The court then held that, "no juror testified that the failure to answer the questions affected their deliberation process . . . such error was harmless." *Id.* at ¶ 59. In essence the post-conviction court found that this case was similar to the others in this Circuit where the jury received only a "brief procedural remark." We find this to be an unreasonable determination of the facts, warranting the grant of Moore's writ for a number of reasons.

---

[3] The complete, relevant factual findings of that court were as follows:

16. During deliberation, the jury, via the bailiff, did send a note to the trial judge.

17. The note contained questions about where Mr. Moore lived, the distance between Cicero and Tipton and the time Mr. Moore arrived home.

18. The trial court judge directed the bailiff to tell the jurors that their questions could not be answered and that no further questions or review would be allowed.

19. The trial court judge did not wait for the prosecutor or the counsel for the defendant before responding. She should have.

20. No record was made of this portion of the proceeding. A record should have been made.

21. Several ex-jurors testified at the post conviction relief hearing. None of them testified that the court's failure to answer their written question(s) affected their deliberation or their voting.

. . . .

59. Even assuming a proper record had been made and accepting the previous findings in paragraphs 16 through 21 as true, no juror testified that the failure to answer the questions affected their deliberation process. Despite the trial court's failure to follow established procedures for addressing jury questions, such error was harmless.

First, the evidence heard at the post-conviction proceeding was too sparse and ambiguous to support such a conclusion. At the post-conviction hearings, the court heard testimony from three jurors and considered two jurors' affidavits concerning the substance of the communication. The testimony was halting, often jurors repeated they didn't remember what had happened—they could not remember what questions they had asked, how the answer was delivered to them, or the time frame in which their communications took place. There was no consensus as to the substance of the response they heard, two jurors stated they were told the answer to their question was not part of the testimony given at trial,[4] two said they were told they had to recall on their own based on what they heard in the courtroom.[5] Moore's attorney from the trial testified, but had no recollection as to what Judge Smith had told the attorneys she had told the jury. (Supp. R. at 00134.) The Bailiff testified, but again, claimed no knowledge of the substance of the communication. (Supp. R. at 00062.) Importantly, Judge Smith herself neither testified or submitted an affidavit (despite the fact that she was present at the post-conviction hearing). (Supp. R. at 00074-76.) The post-conviction court received no direct statement from the person who would be in the best position to recall how the question was handled.

---

[4] Juror Judith Donnoe testified (consistent with her affidavit) that Judge Smith responded, "It was not part of the testimony so she couldn't answer it"; and juror Donald Meeks replied in the affirmative when asked "Did [the Bailiff] tell the jury that their questions could not be answered because their answers were not part of the testimony?" (Supp. R. at 00029, 00018, 000245)

[5] Juror Linda Ward testified, "I think we had to recall on our own"; In her affidavit, juror Darla Jean Stevens stated they were told, "The jury must make their decision based on what they heard in the court room." (Supp. R. 00022, 00246 ).

In arriving at its legal conclusion that there was no prejudice, the post-conviction court relied on the fact that "no juror testified that the failure to answer the questions affected their deliberation process." Even assuming that jurors should be relied upon to make such an assertion, it is ridiculous to base such a determination on the predictable lack of evidence so many years after the fact. On its face, we find the evidence too sparse to support the post-conviction court's factual findings.

The post-conviction court's finding that there was no prejudice was especially unreasonable due to the fact that a presumption of prejudice applies in situations where *ex parte* communications were made to the jury by a third party.[6] The Supreme Court has stated, "In a criminal case,

---

[6] At the post-conviction hearing there was some dispute as to how Judge Smith's message was conveyed to the jury. We will briefly describe the testimony and post-conviction court's finding. Juror Linda Ward testified she did not remember whether the Bailiff conveyed the response verbally or with a note. (Supp. R. at 00023.) Juror Judith Donnoe stated that the Bailiff answered verbally, she elaborated: "He took our question out and he I'm assuming it was on the paper. I didn't see the paper. It was read to us." (Supp. R. at 00030.) Juror Donald Meeks answered in the affirmative when asked, "[W]hen the Bailiff returned with his answer, he responded verbally to the jury with an answer?" (Supp. R. at 00118.) When William Spencer, the Bailiff, testified, however, while not remembering this note in particular, he averred that "[e]verything's in writing. I have never delivered anything verbally either to the Judge or from the Judge to the Jury." (Supp. R. 00063.) In the post-conviction court's finding of fact, Judge David resolved the matter by finding, "the trial court judge directed the bailiff to tell the jurors that their questions could not be answered." We are satisfied this indicates a verbal—as opposed to written—response by the Judge and Bailiff.

Another factor muddying the waters is that Moore and the government's attorney agreed to a stipulation that recognized,

(continued...)

any private communication, contact, or tampering directly or indirectly, with a juror during the trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial . . . the burden rests heavily upon the Government to establish . . . that such contact with the juror was harmless to the defendant." *Remmer v. United States*, 347 U.S. 227, 229 (1954). Although the Seventh Circuit has distinguished *Remmer* from cases where the contact with the juror was made by the judge,[7] instances involving a judge's use of the bailiff to verbally communicate with the jury remains under the purview of *Remmer*.[8] Here, the post-conviction court concluded that "the trial court judge directed the bailiff to tell the jurors that their questions could not be answered." However, the court then failed to apply the appropriate presumption. If, as we noted above, the evidence heard is not reliable enough to support

---

(...continued)
"Court's standard procedure after advising counsel and parties of question(s) asked . . . has been to write response(s) to questions on the jury's note and have their note returned to the jury." (Supp. R. at 00244). This seems to have little bearing on what, in fact, did happen in Judge Smith's courtroom that day, as the post-conviction court found Judge Smith did not follow proper procedure.

[7] *See, e.g.*, *Ellsworth*, 248 F.3d at 640-41 (finding no *Remmer* presumption where judge responded to jury questions with handwritten notes); *Verdin*, 972 F.2d at 1481-82 (not raising *Remmer* presumption where judge spoke directly to jury). *But see*, *Widgery*, 778 F.2d at 327-31 (majority ignoring *Remmer* presumption in case where judge directed bailiff to convey verbal message to jury; dissent raising *Remmer*-based argument).

[8] *United States ex rel. Tobe v. Bensinger*, 492 F.2d 232, 238 (7th Cir. 1974) (applying *Remmer* framework when judge communicated to jury via the bailiff); *cf.*, *DeGrave v. United States*, 820 F.2d 870, 872 (7th Cir. 1987) (applying *Remmer* framework when court reporter had *ex parte* communications with the jury during deliberations).

a finding of harmless error on its face, it certainly is not strong enough to meet the government's heavy burden necessary to overcome the presumption of prejudice.

The post-conviction court's failure to consider the role of the Bailiff, however, also raises a second, and more worrisome problem: even if the above-described evidence were sufficient to support the court's factual findings, those factual findings never actually addressed what the jury was told during the *ex parte* communications—this half of the inquiry is a necessary component of any determination of prejudice. Our specific problem here is that, even if we agree with the post-conviction court's finding that "the trial court judge directed the bailiff to tell the jurors that their questions could not be answered and no further questions or review would be allowed," we are still uncertain as to whether the Bailiff's phrasing of the response to the jury changed its substance. Given that Moore's disagreement over the content of the Judge's response hinges fine distinctions that may not have been readily apparent to a layperson, we have difficulty glossing over such a gap in the chain of events. Without such a factual finding, we are uncertain how one could arrive at the legal conclusion that there was no prejudice.

Finally, we note that any discrepancy as to what Judge Smith said to the jury is wholly due to the Judge's failure to make a record of the communication as she was obligated to do, and her failure to simultaneously inform the attorneys of the jury's question.[9] When evaluating the effect of

---

[9] This Court was especially disturbed that, during oral argument, Appellee's counsel characterized Judge Smith's *ex parte* response to the jury's question as her routine courtroom procedure. The pertinent dialog in full was:

(continued...)

this communication in terms of "fundamental fairness" to the defendant, we are hesitant to punish Moore for the ambiguities created by the lack of a record.

Accordingly, we reverse and remand to the district court to issue Moore's writ unless the state elects to retry him within 120 days.

### II. The Brady Claim

The second issue Moore raises on appeal is that the prosecution failed to turn over exculpatory police reports in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Because of our disposition of the above issue, we decline to address this claim.

REVERSED AND REMANDED

---

(...continued)

| | |
|---|---|
| Atty Martin: | "The Judge did conduct an *ex parte* communication, your honor, there's no argument about that." |
| Judge Bauer: | "So she didn't follow the routine procedure?" |
| Atty Martin: | "She followed what she stated was *her* routine procedure in her courtroom." |

A true Copy:

   Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*