In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3482

KENNETH MORRIS,

*Petitioner-Appellant,*

*v.*

BRYAN BARTOW,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 03-C-1078 — **William C. Griesbach**, *Chief Judge.*

ARGUED SEPTEMBER 22, 2015 — DECIDED AUGUST 10, 2016

Before FLAUM, WILLIAMS, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* In 2000, petitioner Kenneth Morris shot and killed his friend Billy Smith. The substantive issue in this appeal is whether Morris was coerced to plead guilty in state court to first-degree reckless homicide. That issue lies behind unusually complex layers of procedural issues that have accreted over more than fifteen years. In the end, we agree with the district court that Morris is not entitled to a writ of habeas corpus on any theory. Morris was under strong

pressures when he decided to plead guilty, but the evidence does not show that his guilty plea was involuntary. Even though he was represented by new counsel immediately after pleading guilty, Morris and his new lawyer did not challenge his guilty plea as involuntary in the state trial court. Nor did Morris raise the issue with his appellate lawyer, who did not deny Morris his right to effective assistance of counsel.

I. *Factual and Procedural Background*

A. *The Shooting of Billy Smith and the Guilty Plea*

On October 16, 2000, Kenneth Morris and his friend Billy Smith were sitting in Morris's car. Morris fired a handgun once, hitting Smith in the head and killing him. Later that day, Smith's body was found in a Milwaukee alley where Morris had left him. The State quickly charged Morris with one count of second-degree reckless homicide while using a deadly weapon. After a preliminary hearing, the State raised the charge to first-degree reckless homicide while using a dangerous weapon. Morris retained attorney Michael Backes to represent him.

The case was set for trial on Monday, January 29, 2001. That morning, attorney Backes explained to the court that Morris suddenly wanted a new lawyer. Backes also said he was not prepared for trial because he had understood until just two days earlier that Morris planned to plead guilty to first-degree reckless homicide. When the court asked Morris why he wanted another attorney, Morris responded that he would "just feel better with a different attorney."

The State objected to any delay, and the trial court denied Backes's motion to withdraw. Backes argued that he was not prepared for trial and had not interviewed witnesses, and that

the case was not old, although the State contended that it was. The trial court then offered to postpone the trial for two days to give Backes time to prepare. The court recessed the case until that afternoon when it would conduct a hearing to determine whether Morris still wanted a jury trial. Before the recess, the prosecutor told the judge and the defense, contrary to the State's position some weeks earlier, that if the case went to trial the State would seek leave of the court to increase the charge to first-degree *intentional* homicide. The judge did not signal a view on that tactic but said he would address it in the afternoon. The judge never acted on the prosecution request, and the charge remained first-degree reckless homicide.

During the recess, Morris and the State reached a plea agreement. Morris agreed to plead guilty to first-degree reckless homicide, but without the enhancement for being armed. In exchange for his plea, the prosecution also agreed to leave sentencing to the trial court, without offering a specific recommendation. The judge then conducted a thorough plea colloquy with Morris under oath. Among other points covered in the plea colloquy, Morris told the judge that no one had made any threats or in any way forced him to plead guilty, and that he was satisfied with attorney Backes and his representation. The judge then questioned attorney Backes, who was also satisfied that the guilty plea was knowing and voluntary. The judge concluded by finding that Morris's guilty plea was knowing and voluntary and adjudging him guilty.

After pleading guilty, Morris fired attorney Backes and hired attorney Thomas Awen. Sentencing was set for April 11, 2001. At no point before or during sentencing did Morris or his new lawyer move to withdraw his guilty plea or otherwise

question the voluntariness of the guilty plea. The court listened to extensive presentations by attorneys and witnesses, including family members of both Billy Smith and Morris, as well as a statement in allocution by Morris. After giving a careful and thoughtful explanation of the tragedy in the case and the reasons for the sentence, the trial judge sentenced Morris to 30 years in prison and 20 years of extended supervision.

B. *Direct Appeal*

The state public defender appointed attorney David J. Lang to handle Morris's appeal. Lang filed a no-merit brief pursuant to Wis. Stat. § (Rule) 809.32, which is Wisconsin's procedure for implementing *Anders v. California*, 386 U.S. 738 (1967). In the no-merit report, Lang identified two potential issues: (1) whether Morris might be able to challenge the validity of his guilty plea, and (2) whether the trial court abused its discretion in sentencing Morris. Lang reviewed the record, including the thorough plea colloquy, and concluded there would be no merit to any challenge to the validity of the guilty plea. He also found there would be no merit to a challenge to the sentence.

As required by Wisconsin law, attorney Lang sent Morris a copy of the no-merit report and an explanation of his right to file his own brief disagreeing with the lawyer. Morris responded by requesting from Lang copies of all transcripts and court records. Lang replied that Morris would either need to pay him for copies or could order them directly from the court reporter.

On December 27, 2002, the Wisconsin Court of Appeals affirmed Morris's conviction and released Lang from future

representation of Morris. The court said that Morris elected not to respond to the no-merit report, which was correct, but Morris blamed his failure to respond on Lang's failure to provide transcripts and other records. The court explained that it had conducted an independent review of the record as mandated by *Anders* and Wis. Stat. § (Rule) 809.32(3), and it agreed with Lang's analysis, including that there was no basis for setting aside the guilty plea. Morris did not seek review of that decision by the Wisconsin Supreme Court.

C. *Federal Habeas Proceedings and Later State Proceedings*

On November 4, 2003, Morris filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the district court challenging his guilty plea and the effectiveness of his trial and appellate counsel. The district court denied Morris's petition for a writ of habeas corpus on March 14, 2007 on grounds of procedural default. On September 18, 2007, we reversed and remanded for further consideration, including whether Morris had exhausted his state remedies. Federal proceedings were stayed on remand while Morris pursued additional remedies in state courts, during which he claimed that he received ineffective assistance of appellate counsel and that his guilty plea had been involuntary because it had been coerced.

To pursue state remedies, Morris filed a state petition seeking to reinstate his direct appeal rights. The Wisconsin Court of Appeals then directed the state trial court to conduct an evidentiary hearing on Morris's claim for ineffective assistance of appellate counsel. During the evidentiary hearing in 2008, both Morris and attorney Lang testified about their communications with each other. The state trial court entered findings of fact. App. 150–54. Those factual findings are presumed

correct under 28 U.S.C. § 2254(e)(1). The trial court found that before Lang filed his no-merit report, he had communicated with Morris about the issues he wanted to raise and that Morris wanted Lang to seek a reduced sentence. The trial court also found that Morris never complained to Lang about any coercion to plead guilty, and that if Morris had complained of coercion, Lang would not have failed to respond.

The state appellate court eventually determined that Lang had provided deficient performance by refusing to provide the transcripts and records to Morris, but also that Morris had not shown any resulting prejudice. See Wis. Stat. § (Rule) 809.32(1)(b)(2) (2007–08). Morris had been present for all hearings for which there were transcripts, and those transcripts did not show a basis for setting aside his guilty plea, particularly in view of the thorough guilty plea colloquy leading to the trial court's finding that the plea was knowing and voluntary. And if Morris had felt coerced into pleading guilty, he could have said so and explained why.

Ultimately, the state courts rejected the ineffective assistance of appellate counsel claim on the merits and rejected the stand-alone coercion claim as barred by Morris's failure to raise it earlier. Morris then reactivated the federal case and filed an amended federal petition on July 31, 2012. The district court issued a thorough opinion denying relief.

II. *Analysis*

Morris appealed, and we issued a certificate of appealability on four questions: (1) whether Morris's guilty plea was coerced, (2) whether his appellate counsel was ineffective for failing to raise the coercion issue in the direct appeal, (3) whether either claim is procedurally defaulted, and (4) if so

whether any exception to the rule of procedural default applies here.

As the case comes to us on appeal, Morris asserts two intertwined violations of his constitutional rights: first, a claim that his appellate attorney provided ineffective assistance of counsel by failing to argue in the direct appeal that his guilty plea was coerced, and second, a stand-alone claim that his guilty plea was coerced. We address first the claim of ineffective appellate counsel, where the state courts decided the claim on the merits and our review is deferential. We then turn to the stand-alone claim of a coerced guilty plea, which the State asserts is subject to a procedural default. We review *de novo* the district court's treatment of legal issues, and we review findings of fact for clear error. *Denny v. Gudmanson*, 252 F.3d 896, 900 (7th Cir. 2001); *Ellsworth v. Levenhagen*, 248 F.3d 634, 638 (7th Cir. 2001).

A. *Effective Assistance of Appellate Counsel*

Morris asserts that his lawyer who filed the no-merit report in his direct appeal provided ineffective assistance of counsel. We focus first on the scope of this claim that is before us and the applicable standard of review. Morris asserts that attorney Lang provided ineffective assistance in two ways. First, he says that Lang failed to comply with his procedural obligations under Wisconsin law by refusing his request for the relevant transcripts and court records for use in preparing a response to the lawyer's no-merit report. That particular claim is beyond the scope of the certificate of appealability that we issued.[1] Second, Morris asserts that Lang's assistance

---

[1] As noted, the state courts held that Lang's performance was deficient in this respect but that his failure to provide the transcripts and records did

was ineffective because he did not identify and raise in the direct appeal the claim that Morris was coerced to plead guilty. That claim is within the scope of our certificate of appealability and is properly before us.

The state courts considered this claim of ineffective assistance. The Wisconsin Court of Appeals applied the correct federal constitutional standard from *Strickland v. Washington*, 466 U.S. 668 (1984). *Wisconsin ex rel. Morris v. Pollard*, No. 2008AP1844-W, *4–5 (Wis. App. June 19, 2009), *available at* App. 147–48. We can grant relief on this claim only if the state court decision was contrary to or an unreasonable application of Supreme Court decisions or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). *Strickland* requires proof of both deficient performance and resulting prejudice. 466 U.S. at 687. The Court also cautioned: "Judicial scrutiny of counsel's performance must be highly deferential," avoiding the temptation to use hindsight to second-guess decisions that counsel made at the time. *Id.* at 689.

Applying the *Strickland* standard, the state court found no deficient performance in Lang's failure to argue in the direct appeal that Morris's guilty plea was coerced. The appellate court's decision on this claim was driven by the findings of fact the state trial court made after hearing testimony from both Morris and Lang. Morris's guilty plea colloquy with the

---

not cause prejudice to Morris, as required for a successful claim for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). If we were to reach that issue, it would be difficult to find that the state court's decision on the lack of prejudice was an unreasonable application of Supreme Court precedent or based on an unreasonable determination of the facts, as needed to obtain federal habeas relief. 28 U.S.C. § 2254(d).

trial judge was thorough. It offers no support for a claim of coercion. The claim of coercion requires Morris to overcome the strong "presumption of verity" that courts give to a defendant's sworn answers in the colloquy. See *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987). The state trial court found that Morris never told Lang that he felt coerced or pressured into pleading guilty. The state appellate court also found that the appellate record did not support a claim of coercion. The state appellate court also found no deficient performance, taking into account the facts that Morris did not complain to Lang about feeling coerced beyond the record and that Morris did not indicate any coercion during the plea colloquy.

When a lawyer files an *Anders* brief or no-merit report in a criminal appeal, the standard under the Sixth Amendment for deficient performance is whether "a reasonably competent attorney would have found one nonfrivolous issue warranting a merits brief." *Smith v. Robbins*, 528 U.S. 259, 288 (2000); see also *Shaw v. Wilson*, 721 F.3d 908, 915–16 (7th Cir. 2013). In this case, the appellate record on the direct appeal included the plea colloquy and written documents. All indicated that Morris's guilty plea was voluntary. The record also included references to the circumstances that Morris has been arguing show coercion: the lawyer who was not prepared for trial and whose motion to withdraw was denied, the denial of a delay of more than two days in the trial, and the prosecutor's proposal to try Morris for first-degree intentional homicide. Those circumstances tend to support a claim of coercion. What was missing at the time, though, was any suggestion by Morris that he had actually been coerced, so that his sworn

answers in the plea colloquy should be disregarded and he should face trial instead.[2]

In the absence of any claim by Morris that he had been coerced into pleading guilty, the state courts did not apply *Strickland* unreasonably in finding that attorney Lang's performance was not deficient by reason of his failure to argue that Morris's guilty plea had been coerced. We are not suggesting that Morris had to use the word "coerce" or had to recognize as a layperson that his guilty plea was legally invalid. The problem is that nobody knew Morris's state of mind better than Morris. The state courts' factual findings amount to a finding that there is no credible evidence that Morris had given attorney Lang any information about his own state of mind when pleading guilty that would have called the validity of the guilty plea into question. The state courts' rejection of the claim for ineffective assistance of appellate counsel does not justify federal habeas relief.

---

[2] We agree with the state courts that the prosecutor's proposal to increase the charge to first-degree intentional homicide did not amount to prosecutorial misconduct. The prosecutor stated his clear intention at the preliminary hearing to try Morris only on first-degree reckless homicide, but that was not part of a bargain with the defense, nor could the defense show any detrimental reliance or any legally binding commitment not to change positions. Also, based on the prosecutor's statement in the preliminary hearing, it would not have been at all surprising for the trial judge to have rejected out of hand the prosecutor's attempt to raise the charge on the day of the trial. Because Morris decided to plead guilty before the court addressed that attempt, we cannot know what would have happened.

B.  *The Stand-Alone Claim of a Coerced Guilty Plea*

   1.  *The State's Procedural Default Argument*

The procedural issues over the fifteen-year course of Morris's attacks on his guilty plea have seemed kaleidoscopic, shifting at every stage of the many state and federal proceedings. In this appeal, the State has abandoned several of the procedural default findings of the state courts and the district court. See Appellee's Br. at 19 n.3. The State argues instead that Morris's stand-alone claim, that his guilty plea was not voluntary because it was coerced, is procedurally defaulted because the Wisconsin Court of Appeals implicitly rejected that claim on the merits in the direct appeal (where attorney Lang filed the no-merit report), and Morris did not seek review by the Wisconsin Supreme Court, as required by *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999). We disagree with the premise of this procedural default argument, whether the state appellate court implicitly decided on the merits a claim that was not even raised in the *Anders* brief or no-merit report.

   The no-merit report filed by Lang did not assert that Morris's plea was coerced. The report raised in general terms the validity of the guilty plea as a potential issue and found no basis for a challenge to it, based on the appellate record. The Wisconsin Court of Appeals reviewed the guilty plea questionnaire, the waiver-of-rights form, and the transcript of the plea colloquy and concluded that the trial court had complied with the requirements for a valid plea and that "challenging the validity of Morris's guilty plea would lack arguable merit." Neither the no-merit report nor the appellate opinion addressed whether the combination of the denial of Morris's request to remove attorney Backes, the attorney's lack of preparation, the denial of a delay of more than two days, and the

prosecution's proposal to raise the charge to intentional homicide coerced Morris to plead guilty.

The State's theory is that because the record included signs of all four of those arguably coercive circumstances, and because the appellate court was obliged to search the record for any arguable legal issues, its decision to accept the no-merit report amounted to an implicit rejection of Morris's current stand-alone coercion claim on the merits. If that were correct, the argument continues, Morris then defaulted that claim by failing to seek review by the Wisconsin Supreme Court. See *Boerckel*, 526 U.S. at 839–40 (to satisfy requirement to exhaust state remedies, prisoner must present his claims to state supreme court in petition for discretionary review).

We do not believe we should read the state appellate decision as a decision on the merits of a claim that was never presented to that court. The United States Supreme Court explained in interpreting 28 U.S.C. § 2254(d): "A judgment is normally said to have been rendered 'on the merits' only if it was 'delivered after the court ... heard and *evaluated* the evidence and the parties' substantive arguments,'" *Johnson v. Williams*, 568 U.S. —, —, 133 S. Ct. 1088, 1097 (2013), quoting Black's Law Dictionary 1199 (9th ed. 2009) (emphasis added in *Williams*), and that a decision on the merits requires a decision on "[t]he *intrinsic rights and wrongs of a case* as determined by *matters of substance*, in distinction from matters of form.'" *Id.*, quoting Webster's New Int'l Dictionary 1540 (2d ed. 1954) (emphasis added in *Williams*). The state appellate court's silence concerning a claim not actually presented to it does not

amount to a decision on the merits, for purposes of § 2254(d) or *Boerckel*.[3]

This approach is consistent with the state courts' decisions themselves. The state appellate court did not believe it had decided the merits of the stand-alone coercion claim. When Morris later presented his coercion claim to the state courts, the appellate court found in 2011 that the claim had not been presented, let alone decided, in the direct appeal. App. 134–42 (finding that Morris had not justified his earlier failure to raise the issue, so "we do not address the merits of Morris's claim that his guilty plea was not knowing, intelligent, and voluntary"). Accordingly, we consider the stand-alone coercion claim under 28 U.S.C. § 2254(a), without deference to the state court's rejection of the claim on procedural grounds.[4]

---

[3] This case does not present the different sort of problem that arises when a state prisoner argues that he implicitly presented his federal-law claim to the state courts by raising a closely related state-law claim. We have recognized that such a state-law claim can amount to fair presentment of federal-law claims in some circumstances. See, e.g., *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001); *Kurzawa v. Jordan*, 146 F.3d 435, 441–42 (7th Cir. 1998). When a habeas petitioner relies on such implicit presentment of a federal-law claim, it may well be appropriate to treat the state courts' rejection of the explicit state-law claim as an implicit decision on the merits of the implicit federal-law claim. See *Schmidt v. McCulloch*, 823 F.3d 1135, 1143 (7th Cir. 2016) (Hamilton, J., concurring in judgment). These considerations do not apply when the State argues there has been an implicit decision on the merits of a claim that was not actually presented.

[4] The State has not argued on appeal that the procedural bar found in the state appellate court's 2011 decision amounted to an adequate and independent state-law ground for rejecting Morris's coercion claim. See Appellee's Br. at 19 n.3.

## 2.  *The Merits of the Coerced Guilty Plea Claim*

There is no doubt that Morris was under tremendous pressure on January 29, 2001. The combination of his lawyer's lack of preparation for trial and the trial court's refusal to delay the trial by more than two days could present a claim of coercion in other circumstances. Two days to prepare would ordinarily seem inadequate, of course. As the state courts and district court have recognized, though, this would have been an unusually simple homicide trial. There was no doubt that Morris had pulled the trigger to shoot and kill Smith. Morris himself was the only witness to the shooting. Morris has not identified additional witnesses or lines of inquiry that his lawyer would have needed to pursue to prepare adequately for trial. Nor did his lawyer object to the trial judge that two days would not be enough.

Most compelling is Morris's failure, even when represented by a newly retained lawyer, to seek to withdraw his guilty plea in the months before sentencing. Morris's claim of coercion resulting from attorney Backes's lack of trial preparation and the trial court's refusal to delay for more than two days would have more force if, shortly after the guilty plea but before sentencing, Morris and his new lawyer had moved to withdraw his plea based on coercion, pointing to the powerful pressures on him to plead guilty on January 29th. Perhaps such a motion would have offered an explanation sufficient to overcome the presumption of truth that applies to a defendant's sworn answers to a judge during a plea colloquy. See, e.g., *United States v. Collins*, 796 F.3d 829, 834 (7th Cir. 2015); *Ellison*, 835 F.2d at 693.

But if Morris actually felt coerced, despite his satisfactory answers during the plea colloquy, only he could say so. As we

have said, no one else knew his state of mind better than he did. With his new attorney, Awen, whose effectiveness has never been questioned, Morris went forward under the plea and argued for a modest sentence. To the extent that the original attorney, Backes, might have failed to investigate the case sufficiently, the second attorney, Awen, was given as much time as he needed to investigate the case before sentencing, where Morris's state of mind at the time of the shooting was a key issue.

Even with his new attorney, Morris never moved to set aside the guilty plea and never called it into question. Not until after the trial judge imposed a relatively severe sentence and the no-merit appeal had concluded did Morris begin claiming that his guilty plea had been coerced. Then we also have the findings of the state courts regarding Morris's dealings with his appellate attorney Lang. Those findings bind us as long as they are reasonable, and they are. They tell us that Morris never communicated to his appellate lawyer Lang that he thought he had been pressured unfairly into pleading guilty. In light of all these circumstances, we conclude that Morris has not shown that acceptance of his guilty plea violated his federal constitutional rights. See 28 U.S.C. § 2254(a).

*     *     *

The state courts' rejection of Morris's claim that his appellate lawyer provided ineffective assistance in his direct appeal was not contrary to or an unreasonable application of Supreme Court decisions or based on an unreasonable view of the facts. Morris's stand-alone claim that his guilty plea was coerced is subject to *de novo* review, but we find no violation

of his federal constitutional rights. The judgment of the district court denying Morris's petition for a writ of habeas corpus is AFFIRMED.